**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

JORGE GONZALEZ,

    Petitioner,

v.

TRACY JOHNS, Warden,

    Respondent.

CIVIL ACTION NO.: 5:16-cv-38

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Jorge Gonzalez ("Gonzalez"), who was formerly incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 11.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Gonzalez's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Gonzalez *in forma pauperis* status on appeal.

## **BACKGROUND**

Gonzalez was convicted in the Eastern District of North Carolina, after entry of a guilty plea, of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. He was sentenced to 120 months' imprisonment on August 5, 2009. (Doc. 11-1, pp. 13–14.) Gonzalez had a projected release date of March 20, 2017, via good conduct time credit. (Id. at p. 11.)

In his Petition, Gonzalez asserts that his due process rights were violated on August 16, 2010, as a result of disciplinary proceedings arising out of a charged incident of possession of a cell phone and which occurred while he was housed at the Federal Correctional Institution in

Fort Dix, New Jersey ("FCI Fort Dix"). Specifically, Gonzalez avers he was not given the opportunity to call witnesses. (Doc. 1, p. 4.) Gonzalez also contends he was sanctioned with the loss of good conduct time credit that exceeds the sanction normally associated with this charged offense. Gonzalez maintains the punishment he was given was inhumane and an abuse of discretion. (Id.) In addition, Gonzalez contends the Bureau of Prisons ("BOP") classified him as a deportable alien, which precluded his participation in several programs, including release to a halfway house. Moreover, Gonzalez asserts he was denied medical care and treatment for a needed hernia operation. (Id. at p. 5.) Gonzalez seeks the restitution of his forfeited good conduct time and his immediate release.[1] (Id. at p. 6.)

Respondent avers Gonzalez failed to exhaust his administrative remedies prior to filing his Petition, and his Petition should be dismissed as a result. (Doc. 11.) The Court addresses Respondent's contention.

## DISCUSSION

### I. Whether Gonzalez Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not

---

[1] Several of the claims Gonzalez raises in his Petition are of alleged constitutional violations and should have been brought pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). However, because the remedies Gonzalez seeks are restitution of lost good conduct time and his immediate release, the Court addresses his Petition as containing solely claims for habeas relief. When a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994). Even if the Court were to address the constitutional claims, those claims would be subject to dismissal, too, based on Gonzalez's failure to exhaust his administrative remedies.

2

congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

3

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.   Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts

outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. The BOP's Exhaustion Requirements

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542.10, *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP.[3] 28 C.F.R. § 542.10(b). Under the applicable Regulations, an

---

[3] Respondent mentions that inmates who are housed at D. Ray James Correctional Facility have access to the BOP's administrative remedy process to file grievances relating to BOP matters, such as the loss of good conduct time. (Doc. 11, p. 5.) While this is an accurate statement, the Court questions the relevancy of such a statement to Gonzalez's Petition. Gonzalez was not housed at D. Ray James Correctional Facility until October 15, 2014, or more than four (4) years after the August 2010 disciplinary proceedings at FCI Fort Dix. (Id. at pp. 1, 3.) Thus, Gonzalez would have had to have

5

inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. 28 C.F.R. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within twenty calendar days of the incident giving rise to the grievance. 28 C.F.R. § 542.14(a). Administrative Remedy Form BP-229(13) is the form to be utilized at the institution level. This form is commonly referred to as a "BP-9" form. (Doc. 11-1, p. 40.) If unsatisfied with the Warden's response to the BP-9 administrative remedy request, an inmate may take an initial appeal to the appropriate Regional Director within twenty days of when the Warden signed the response. 28 C.F.R. § 542.15(a). Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level. This form is commonly referred to as a "BP-10" form. Id. If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within thirty days of when the Regional Director signed the response. (Doc. 11-1, p. 43.) Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. (Id.) Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form. (Id.)

In those situations in which an inmate is appealing a disciplinary hearing proceeding, however, the inmate is to submit an appeal directly with the Regional Director, or a BP-10, for the region in which the inmate is located at the time of filing. (Id. at p. 42.) At any level, the coordinator may reject and return an appeal that does not meet any of the requirements, 28 C.F.R. § 542.17, including only using only one letter-sized continuation page, (doc. 11-1, p. 44). The inmate must be provided with written notice of the reason for rejection and be given a

---

completed the administrative remedy process long before he was housed at D. Ray James. Gonzalez was transferred out of FCI Fort Dix on September 8, 2010, and was admitted to what appears to be another BOP facility on November 12, 2010, until September 26, 2014. (Doc. 11-1, p. 20.) Accordingly, the BOP's exhaustion requirements are what are at issue in this case.

reasonable extension of time to correct the deficiencies. (Id.) If the inmate is not given an opportunity to correct the defect or resubmit, he can appeal the rejection. (Id. at p. 45.)

### D. Gonzalez's Efforts at Exhaustion

In his Petition, Gonzalez does not mention whether he exhausted his available administrative remedies. (Doc. 1.) However, the evidence before the Court reveals that Gonzalez filed a BP-10 on August 20, 2010, while he was still housed at FCI Fort Dix, in which he appealed the disciplinary hearing proceedings against him. (Doc. 11, pp. 3–4.) The Regional Director rejected Gonzalez's BP-10 on August 31, 2010, because Gonzalez attached too many continuation pages. (Id. at pp. 6–7; Doc. 11-1, pp. 6, 62.) Gonzalez was advised he could resubmit his appeal in proper form within ten (10) days, yet he failed to do so. (Doc. 11-1, p. 6.) Nor did Gonzalez otherwise use the administrative remedy process to attack the disciplinary proceedings or appeal the rejection of his BP-10—specifically, the filing an appeal with the Office of General Counsel, which is the last step of the administrative remedies process. Gonzalez failed to exhaust his administrative remedies prior to the filing of his Petition. Consequently, the Court should **DISMISS** Gonzalez's Petition.

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Gonzalez leave to appeal *in forma pauperis*. Though Gonzalez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189

F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Gonzalez's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Gonzalez *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Gonzalez's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Gonzalez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Gonzalez and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA